UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE ___ DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983



PROVIDED TO
MADISON CI
DEC 3 0 2008
FOR MAILING

**KURTIS ROY JETER**,

Inmate # **A-959775**         .
  (Enter full name of Plaintiff)


vs.                                                 CASE NO: **5:09 cv/ RS/AK**
                                                        (To be assigned by Clerk)

**OFFICE OF THE STATE ATTORNEY 14TH JUDICIAL CIRCUIT**

**STATE ATTORNEY STEVE MEADOWS**

**WASHINGTON COUNTY SHERIFFS DEPARTMENT**

**SHERIFF BOBBY HADDOCK  WCSD**

**DEPUTY RICKY SEWELL  WCSD**

(Enter name and title of each Defendant.

If additional space is required, use the

blank area below and directly to the right.)

**ASSISTANT STATE ATTORNEY  BARBARA FINCH**

**ASSISTANT STATE ATTORNEY**

**BAY COUNTY SHERIFFS DEPARTMENT**

ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

**DEPARTMENT OF CORRECTIONS DIVISION OF PROBATION & PAROLE**

**CORRECTIONAL PROBATION OFFICER SONYA GAINER**

**SHERIFF FRANK MCKEITHEN BCSD**

**CHIEF DEPUTY JAMES HOLLOWAY BCSD**

**DEPUTY INVESTIGATOR PIERCE BCSD**

**CIRCUIT JUDGE DON T. SIRMONS 14TH CIRCUIT**

**CIRCUIT JUDGE ~~JIM~~ ALLEN REGISTER 14TH CIRCUIT**

ADDITIONAL DEFENDANTS:

PUBLIC DEFENDER FLOYD GRIFFITH

PUBLIC DEFENDER JOEL MARGULES

ATTORNEY LEON JACOBS

ATTORNEY DAVID HOUSE

LANDLORD IKE DUREN

**I.    PLAINTIFF:**

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:      **KURTIS ROY JETER**

Inmate Number          **A-959775**

Prison or Jail:             **MADISON CORRECTIONAL INSTITUTION**

Mailing address:        **382 S.W. MCI WAY**

                                     **MADISON, FL 32340**

                                     **N/A**

**II.    DEFENDANT(S):**

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for <u>**every**</u> Defendant:

(1)    Defendant's name:    **STEVE MEADOWS**

         Official position:       **FMR. STATE ATTORNEY**

         Employed at:            **OFFICE OF THE STATE ATTORNEY 14TH JUDICIAL CIRCUIT**

         Mailing address:       **421   HARRISON AVENUE**

                                        **PANAMA CITY, FL 32401**

(2)    Defendant's name:    **JAMES BERNARD HOLLOWAY**

         Official position:       **CHIEF DEPUTY**

         Employed at:            **BAY COUNTY SHERIFFS DEPARTMENT**

         Mailing address:       **3421 NORTH HWY. 77**

                                        **PANAMA CITY, FL 32405**

(3)    Defendant's name:    **RICKY SEWELL**

         Official position:       **DEPUTY SHERIFF**

         Employed at:            **WASHINGTON COUNTY SHERIFFS DEPARTMENT**

         Mailing address:       **P.O. BOX 626**

                                        **CHIPLEY, FL 32428**

<u>ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS</u>

II. DEFENDANT(S) CONT.

(4) DEPUTY PIERCE
INVESTIGATOR
BAY COUNTY SHERIFFS DEPARTMENT
3421 N. HWY 77
PANAMA CITY, FL. 32405

(5) BARBARA FINCH
ASST. STATE ATTORNEY - 14TH JUDICIAL CIRCUIT
OFFICE OF THE STATE ATTORNEY
421 MAGNOLIA AVENUE
PANAMA CITY, FL 32401

(6) SONYA GAINER
CORRECTIONAL PROBATION OFFICER
DEPT. OF CORRECTIONS - PROBATION AND PAROLE
BECK AVENUE
PANAMA CITY, FL 32401

(7) FLOYD GRIFFITH
PUBLIC DEFENDER - 14TH JUDICIAL CIRCUIT
OFFICE OF HERMAN D. LARAMORE
1293 JACKSON AVE. BLD 300 SUITE B
CHIPLEY, FL 32428

(8) JOEL MARGULES
PUBLIC DEFENDER - 14TH JUDICIAL CIRCUIT
OFFICE OF HERMAN D. LARAMORE
P.O. BOX 580
PANAMA CITY, FL 32401

II. DEFENDANT(S) CONT.

(9)

ASSISTANT STATE ATTORNEY - 14TH JUDICIAL CIRCUIT
OFFICE OF THE STATE ATTORNEY
421 MAGNOLIA AVE.
PANAMA CITY, FL 32405/32401

(10) ALLEN REGISTER
CIRCUIT JUDGE - 14TH JUDICIAL CIRCUIT
WASHINGTON COUNTY COURTHOUSE
1293 JACKSON AVE.
CHIPLEY, FL 32428

(11) DON T. SIRMONS
CIRCUIT JUDGE - 14TH JUDICIAL CIRCUIT
BAY COUNTY COURTHOUSE
300 E. 4TH STREET
PANAMA CITY, FL 32401

(12) LEON JACOBS
ATTORNEY AT LAW
LAW OFFICE OF WILLIAMS AND JACOBS
1720 S. GADSDEN STREET SUITE 201
TALLAHASSEE, FL 32301 - 5506

(13) DAVID HOUSE
ATTORNEY AND PART-TIME ASST. STATE ATTORNEY
14TH JUDICIAL CIRCUIT
LAW OFFICE OF DAVID HOUSE
16685 S.E. RIVER STREET
BLOUNSTOWN, FL 32424

2-B

II. DEFENDANT(S) CONT.

(14) IKE KENNETH DUREN
LANDLORD
BLUEWATER REALTY
122 LEGEND LAKES DR.
PANAMA CITY BEACH, FL 32408

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV. PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A. Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?

Yes( )          No(**✗**)

1. Parties to previous action:
   (a)  Plaintiff(s): _____ **N/A** _____
   (b)  Defendant(s): _____ **N/A** _____

2. Name of judge: _____ **N/A** _____          Case #: _____ **N/A** _____

3. County and judicial circuit: _____ **N/A** _____

4. Approximate filing date: _____ **N/A** _____

5. If not still pending, date of dismissal: _____ **N/A** _____

6. Reason for dismissal: _____ **N/A** _____

7. Facts and claims of case: _____ **N/A** _____
   _____ **N/A** _____

**(Attach additional pages as necessary to list state court cases.)**

B. Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( )          No(**✗**)

1. Parties to previous action:
   a.  Plaintiff(s): _____ **N/A** _____
   b.  Defendant(s): _____ **N/A** _____

2. District and judicial division: _____ **N/A** _____

3. Name of judge: _____ **N/A** _____          Case #: _____ **N/A** _____

4. Approximate filing date: _____ **N/A** _____

5. If not still pending, date of dismissal: _____ **N/A** _____

6. Reason for dismissal: _____ **N/A** _____

3

7.    Facts and claims of case: _____ N/A _____

_____ N/A _____

**(Attach additional pages as necessary to list other federal court cases.)**

C.    Have you initiated other actions (*besides those listed above in Questions (A) and (B))* in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(  )                No(**✗**)

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.    Parties to previous action:
    a.    Plaintiff(s): _____ N/A _____

    b.    Defendant(s): _____ N/A _____

2.    District and judicial division: _____ N/A _____

3.    Name of judge: _____ N/A _____    Case #: ____ N/A _____

4.    Approximate filing date: _____ N/A _____

5.    If not still pending, date of dismissal: ____ N/A _____

6.    Reason for dismissal: _____ N/A _____

7.    Facts and claims of case: _____ N/A _____

_____ N/A _____

**(Attach additional pages as necessary to list cases.)**

D.    Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes(  )                No(**✗**)

1.    Parties to previous action:
    a.    Plaintiff(s): _____ N/A _____

    b.    Defendant(s): _____ N/A _____

2.    District and judicial division: _____ N/A _____

3.    Name of judge: _____ N/A _____    Case Docket # ____ N/A ___

4.    Approximate filing date: ____ N/A _____    Dismissal date: ____ N/A ___

5.    Reason for dismissal: _____ N/A _____

6. Facts and claims of case: _____ N/A _____
_____ N/A _____

**(Attach additional pages as necessary to list cases.)**

## V. STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. Do not make any legal arguments or cite to any cases or statutes. You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. (**If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.**)

① AFTER LEAKING INFORMATION TO LOCAL INDIVIDUALS IN PANAMA CITY, FLORIDA, IN 2001, CONCERNING THE ILLEGAL ACTIVITIES OF THEN ASST. STATES ATTORNEY STEVE MEADOWS, AS WELL AS BAY COUNTY SHERIFFS DEPARTMENT CHIEF DEPUTY JAMES HOLLOWAY, AND OTHERS, ALL OF FLORIDAS 14TH JUDICIAL CIRCUIT, I WAS FALSELY ARRESTED, AND WRONGFULLY INCARCERATED IN 2002, 2003, AND 2004. I WAS FORCED TO MISS WORK, POST BOND, MISS WORK AGAIN, WHILE SUFFERING THE EMBARRASSMENT OF HAVING TO APPEAR IN FRONT OF A JUDGE, AS WELL AS MEMBERS OF MY COMMUNITY, ONLY TO HAVE THE CHARGES DISMISSED AS ERRONEOUS.

② BECAUSE I DID NOT SUCCOMB TO THIS SHOW OF POWER BY ONE OR BOTH OF THE AFOREMENTIONED INDIVIDUALS VIOLATING THE COLOR OF LAW, BUT RATHER ATTEMPTED TO "BLOW THE WHISTLE" BY GIVING THE INFORMATION CONCERNING MY WORK FOR MEADOWS WHILE A DOC WORK RELEASE INMATE, TO HIS FUTURE OPPONENT IN THE 2004 STATE ATTORNEY RACE, ATTORNEY MARTHA (SISTER) BLACKMON MILLIGAN, THESE INDIVIDUALS, WHO HAVE STATED TO SEVERAL WITNESSES THAT THEY WERE GOING TO "GET ME", ALONG WITH WASHINGTON COUNTY SHERIFFS DEPUTY RICKY JEWELL, TOOK AN ALTERCATION THAT OCCURRED WITH MY SIGNIFICANT OTHER, SHEREE DENISE VINSON, AND AGAINST THE WILL OF MS. VINSON, FABRICATED A FOURTH CHARGE IN SEPTEMBER OF 2005, AND ALTHOUGH IN THE ALTERCATION WITH

MS. VINSON I WAS THE VICTIM, DEPUTY RICKY SEWELL, AS WIT-
NESSES AND EVIDENCE WILL SHOW, INSTRUCTED ONE DEPUTY TO
SWEAR TO ANOTHER DEPUTY THAT I HAD KIDNAPPED SHEREE VIN-
SON, FABRICATED A MAKESHIFT WARRANT, AND ORDERED MY ARREST.
THIS EVENT TOOK PLACE AT MY FARM IN WASHINGTON COUNTY, FL.
(3) AFTER THE AFOREMENTIONED INDIVIDUALS WERE THROUGH AT-
TEMPTING TO CONVINCE MS. VINSON TO GO ALONG WITH THEIR PLAN,
AND FELT CERTAIN THAT SHE WOULD, THE WASHINGTON COUNTY
SHERIFFS DEPARTMENT POLITELY DELIVERED MS. VINSON BACK TO
MY DRIVEWAY, WHERE SHE, KNOWING WHAT HAD BEEN DONE TO
ME IN '02, '03 AND '04, EXPLAINED TO ME THEIR INTENTIONS. I
IMMEDIATELY SOUGHT OUT COUNSEL, AND WAS REFERRED TO THE
LATE ROY LAKE, AN ATTORNEY IN THE HOLMES COUNTY TOWN OF
BONIFAY, FLORIDA.
(4) ALTHOUGH THE MAKESHIFT WARRANT HAD A HANDWRITTEN NOTE
STATING "HOLD WITHOUT BOND", AFTER BEING ARRESTED IN PANAMA
CITY, FLORIDA, AND APPEARING BEFORE THE HONORABLE CIRCUIT
JUDGE GLENN HESS AT FIRST APPEARANCE AND EXPLAINING THE
SITUATION, JUDGE HESS, IN A VERY PRUDENT AND JUDICIOUS MAN-
NER, DISCERNED THE MISHANDLING OF THE LAW, MADE THE STATE-
MENT THAT I HAD SURE MADE SOMEONE MAD, AND SET A BOND OF,
IF MY MEMORY SERVES ME CORRECTLY, $5,000.00, WHICH I IMMED-
IATELY POSTED. THIS WAS THANKSGIVING DAY, 2005.
(5) I THEN BEGAN APPEARING AT THE WASHINGTON COUNTY COURTHOUSE,
WITH MR. LAKE AS MY ATTORNEY. IN CONFIDENCE, I HAD EXPLAINED
TO HIM THE CONVERSATIONS THAT I HAD HAD WITH CERTAIN INDIVIDUALS,
INCLUDING MARTHA BLACKMON MILLIGAN, AND HOW MRS. MILLIGAN HAD
CONTACTED ME A COUPLE OF NIGHTS BEFORE THE 2004 STATE ATTOR-
NEY ELECTION, AND TRIED TO CONVINCE ME TO GO TO THE LOCAL TV
STATION TO MEET A FRIEND OF HERS, AND GO "ON THE RECORD" ON
HER BEHALF WITH THE INFORMATION CONCERNING MEADOWS. I ALSO

MADE MR. LAKE AWARE THAT I HAD REFUSED FOR FEAR OF FUR-
THER REPRISAL. IRONICALLY, I WAS CHARGED WITH THE AFORE-
MENTIONED KIDNAPPING CHARGE LESS THAN A YEAR LATER.

(6) ALTHOUGH MS. VINSON AND I APPEARED IN THE WASHINGTON
COUNTY CIRCUIT COURTROOM MONTH AFTER MONTH WITH THE HOPE
OF EXPLAINING THE FACTS, WHICH WOULD, WITHOUT A DOUBT,
EXONERATE ME, JUDGE ALLEN REGISTER, ASSISTANT STATES
ATTORNEY BARBARA FINCH, AS WELL AS MY ATTORNEY ROY LAKE,
KEPT AGREEING TO CONTINUE THE CASE. NONE OF THE OFFICERS
OF THE COURT WOULD ACKNOWLEDGE MS. VINSONS PRESENCE.

(7) ON OR ABOUT THE FOURTH OR FIFTH COURT APPEARANCE,
MR. LAKE, AFTER INSTRUCTING ME TO REMAIN SILENT (FOR HE
STATED THAT IT WAS MY MOUTH THAT HAD GOTTEN ME INTO THIS
SITUATION) WAIVED MY RIGHT TO A SPEEDY TRIAL. I BELIEVE
THIS WAS DONE FOR TWO REASONS.

A. TO DELAY THE CASE, OR THE DISPOSITION THEREOF, IN ORDER
   FOR ME TO PAY MR. LAKE, WHO HAD FINANCED MY FEE.

B. IN HOPES THAT THEY (THE OFFICERS OF THE COURT) COULD PRE-
   VENT THE FACTS, IN THEIR ENTIRETY, FROM BEING TOLD IN OP-
EN COURT, THUS BECOMING A MATTER OF RECORD.

(8) AS A RESULT OF MR. LAKES POOR JUDGEMENT IN WAIVING MY
CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL, AND BECAUSE HE WOULD
NOT ALLOW SHEREE AND I TO JUST APPROACH THE BENCH AND
TELL THE TRUTH, WE HAD A FALLING OUT, AND MR. LAKE STAT-
ED THAT HE WAS GOING TO REMOVE HIMSELF AS MY ATTORNEY,
BUT ON THE FOLLOWING COURT DATE, MR. LAKE SHOWED UP ON
MY BEHALF, AND ONCE AGAIN, A CONTINUANCE.

(9) AFTER SEVERAL MORE MONTHS OF MISSING WORK, AND DRIV-
ING FROM MY PANAMA CITY BEACH RESIDENCE TO THE WASH-
INGTON COUNTY COURTHOUSE TO APPEAR, MR. LAKE CAME UP
WITH WHAT HE APPEARED TO THINK WAS AN INGENIOUS IDEA.
HE TOLD SHEREE AND I, AT A MEETING IN HIS OFFICE, THAT
HE WAS GOING TO SUBPOENA SHEREE, AND INSTRUCTED HER NOT
TO SHOW UP, STATING THAT HE HAD ARRANGED WITH THE JUDGE

6-A

TO DROP THE CHARGES. SHEREE AND I WERE BOTH RELUCTANT, BECAUSE WE BOTH WANTED TO SIMPLY BE AFFORDED THE OPPORTUNITY TO STATE THE FACTS, WHICH WOULD RESULT IN A DISMISSAL, BUT MR. LAKE GUARANTEED BOTH MS. VINSON AND MYSELF THAT SHE WOULD NOT BE ARRESTED.

(10) IN THE EIGHTH OR NINTH MONTH OF COURT APPEARANCES, AS THE COURTROOM VIDEOTAPE WILL PROVE, I APPEARED FOR THE FIRST TIME WITHOUT MS. VINSON ACCOMPANYING ME BY SITTING IN THE PEWS, (FOR SHE WAITED IN THE CAR), BUT THE PROSECUTOR, NOW FOR THE FIRST TIME, MADE A FUSS ABOUT MS. VINSON NOT BEING THERE, SO THE JUDGE SAID THAT HE WOULD CONTINUE IT ONCE AGAIN, AND ISSUE A "PICK-UP" ORDER FOR MS. VINSON. AT THIS POINT, I WANTED TO SAY "YOU BUNCH OF UNDERHANDED INDIVIDUALS, YOU KNOW GOOD AND WELL THAT MS. VINSON HAS BEEN HERE, RIGHT IN FRONT OF YOU, FOR NEARLY A YEAR, AND YOU'RE ACTING STINKS!", BUT BECAUSE OF MY ATTORNEY, I HELD MY PEACE.

(11) JUST PRIOR TO THE NEXT COURT DATE, MS. VINSON AND I BOTH CONTACTED THE WASHINGTON AND BAY COUNTY SHERIFFS DEPARTMENTS, AND BOTH AGENCIES STATED THAT THERE WAS NO PICKUP ORDER. ON THE SUBSEQUENT COURT APPEARANCE, THE JUDGE AGAIN STATED THAT MS. VINSON WAS NOT PRESENT, AND AS HE WAS JUST ABOUT TO DISMISS THE CHARGES (AS THE VIDEO RECORDS WILL ONCE AGAIN REFLECT), I HAD DECIDED THAT I HAD HAD ENOUGH OF "PLAYING COURT", AND HAD HAD ENOUGH OF ROY LAKES' WISDOM, OR LACK THEREOF, AND FINALLY SPOKE UP, STATING THAT MS. VINSON AND I HAD CONTACTED THE AUTHORITIES, AND THERE WAS NO PICK-UP ORDER, NOR ANY TYPE OF WARRANT. THE PROSECUTOR, BARBARA FINCH, EXCLAIMED, "YOUR HONOR, THEREIN LIES THE PROBLEM!", AND THE COURT WAS CONTINUED AGAIN. MS. FINCHS' RESPONSE INDICATED SURPRISE, SO IN ALL FAIRNESS TO MS. FINCH, I DO NOT BELIEVE THAT SHE WAS INVOLVED IN MR. LAKES' SCHEME

TO HAVE THE CHARGES THROWN OUT, FOR AS MEADOWS UNDER-
LING, SHE WAS PURSUING THE VINDICTIVE PROSECUTION WITH
DILLIGENCE. ALTHOUGH THE CHARGES WERE ABOUT TO BE DIS-
MISSED, BECAUSE I AM A MAN OF INTEGRITY, I FELT THAT
THIS WAS CHEATING, AND IT WAS OUR DESIRE TO SIMPLY TELL
THE TRUTH, AND LET THE FACTS SPEAK FOR THEMSELVES.
(12) WITHIN A MATTER OF DAYS, SHE WAS ARRESTED AT MY HOME
IN PANAMA CITY BEACH BY TWO CIVILIANS FROM THE STATES AT-
TORNEYS OFFICE, AND TRANSPORTED TO THE BAY COUNTY JAIL,
AND CHARGED WITH MISDEMEANOR CONTEMPT OF COURT. THE
BOND WAS SET, OUT OF WASHINGTON COUNTY, AT $100,000.ᵒᵒ.
AFTER SEVERAL DAYS IN THE BAY COUNTY JAIL, MS. VINSON
WAS TRANSFERED TO WASHINGTON COUNTY, WHERE SHE RE-
MAINED DUE TO OUR INABILITY TO POST BOND.
(13) AFTER SEVERAL WEEKS AND TWO MORE WASHINGTON COUN-
TY COURT APPEARANCES, I COULD NO LONGER STAND MS. VIN-
SONS CONTINUAL GRIEVOUS TELEPHONE CALLS, NOR DID I TAKE
HER SUICIDE THREATS LIGHTLY (AS CAN BE VERIFIED BY
WASHINGTON COUNTY JAIL MOVEMENT RECORDS CONCERN-
ING SUICIDE WATCH.). AS A RESULT, I HIRED NORTH FLOR-
IDA INVESTIGATIONS MANAGEMENT TO DEPOSE SHEREE. IN-
VESTIGATOR JIMMY HUTCHINSON PROCURED A RECORDED
STATEMENT FROM MS. VINSON, STATING THAT I DID NOT
KIDNAP HER, BUT IN FACT THE CHARGES WERE FABRICATED.
(14) I THEN CONTACTED AS MANY INDIVIDUALS OF AUTHORITY
AS POSSIBLE, IN ORDER TO DRAW AS MUCH ATTENTION AS POS-
SIBLE TO OUR SITUATION, IN ORDER TO OBTAIN HELP FOR MS.
VINSON, AS A RAPE VICTIM WOULD DO WHILE BEING ATTACKED
IN A DARK ALLEY, FOR MS. VINSON HAD CONVINCED ME THAT
SHE WOULD IN FACT TAKE HER OWN LIFE IF I DID NOT GET
HER OUT OF JAIL IMMEDIATELY.
(15) ALTHOUGH I RECEIVED RESPONSES FROM SEVERAL INDIV-
·IDUALS CONCERNING THIS SITUATION, INCLUDING GOVERNOR

JEB BUSH, ALL AVENUES LED TO THE FLORIDA DEPARTMENT OF LAW ENFORCEMENT. ALTHOUGH THE HEAD MAN AT F.D.L.E, FORMER BAY COUNTY SHERIFF GUY TUNNELL, HAD JUST BEEN ASKED TO RESIGN BY GOVERNOR JEB BUSH, I KNEW HOW CLOSE HE WAS WITH MEADOWS, AND FEARED THAT MEADOWS INFLU- ENCE, HOWEVER CORRUPT, MAY HAVE PERMEATED THE F.D.L.E. VIA MR. TUNNELL. IT MAY HAVE BEEN A BAD CALL ON MY PART NOT TO CONTACT F.D.L.E., BUT MEADOWS DID IN FACT HIRE MR. TUNNEL AT THE STATES ATTORNEYS OFFICE UPON HIS RESIGNATION, AND IT WAS A CHANCE THAT I WAS NOT GOING TO TAKE AFTER SUFFERING THE PERSECUTION THAT I HAD SUFFERED FOR SIMPLY TELLING A FEW LOCAL INDIVID- UALS ABOUT MEADOWS ACTIVITIES.

(16) EVENTUALLY, I RECEIVED A RESPONSE FROM SEVERAL IN- DIVIDUALS, WHO TOOK SEVERAL LENGTHY TAPED STATEMENTS CONCERNING THEN STATE ATTORNEY STEVE MEADOWS, BAY COUNTY SHERIFF'S DEPARTMENT CHIEF DEPUTY JAMES HOLLOWAY, AS WELL AS WASHINGTON COUNTY SHERIFFS' DEPUTY RICKY SEWELL. THE INDIVIDUALS WHO TOOK THE STATEMENTS CONCERNING THE AFOREMENTIONED PUBLIC SERVANTS ILLEGAL ACTIVITIES WERE F.B.I. SPECIAL AG- ENT JOSEPH TIERNEY, DEPARTMENT OF CORRECTIONS INSPECTOR GENERALS SENIOR INVESTIGATOR EDDIE WHITE, AND CONGRESSMAN ALLEN BOYDS ASSISTANT, WHOM I ONLY KNOW AS "BOBBY". THE CIRCUMSTANCES OF OUR DILEMMA WERE ALSO COMPLETELY DOCUMENTED, AS THEY TOOK PLACE, BY A REPORTER FROM THE TALLAHAS- SEE DEMOCRAT. THIS INDIVIDUAL IS ONLY KNOWN TO ME AS "MR. PRICE". WITH MUCH DISAPPOINTMENT, I EVEN- TUALLY CAME TO THE KNOWLEDGE THAT NONE OF THESE INDIVIDUALS WOULD, OR COULD, DO ANYTHING TO RECTIFY THE CIRCUMSTANCES THAT HAD NOT ONLY CAUSED MY WRONGFUL INCARCERATION, BUT NOW MS. VINSONS AS WELL.

6-D

(17) THEREFORE, I DECIDED THAT WITH MR. LAKES INEF-
FECTIVE COUNSEL, I WAS LEFT WITH NO CHOICE BUT TO
PERSONALLY ASK THE PROSECUTOR, MS. BARBARA FINCH,
WHAT I COULD DO TO HAVE MS. VINSON RELEASED FROM
JAIL. ALTHOUGH THE STATE HAD CHANGED THE KIDNAP-
PING CHARGE TO WHAT THEY CALLED "FALSE IMPRISONMENT",
(ONCE THEY REALIZED THAT I WAS NOT JUST GOING TO PLEA
TO THE FABRICATED CHARGES), MS. FINCH TOLD ME THAT SHE
WOULD AGREE TO LET MS. VINSON GO FREE IF I WOULD SIGN
A PLEA STATING THAT I HAD COMMITTED NOT ONE, BUT TWO
FELONY BATTERY CHARGES. AFTER CONVERSING WITH MY
FAMILY (FATHER AND DAUGHTER), AS WELL AS ROY LAKE,
MR. LAKE CONVINCED ME THAT IF I DID PLEA TO THE CHAR-
GES, AND ACCEPT FIVE YEARS PROBATION, THAT HE COULD
FILE A MOTION (3.850) WHICH WOULD GUARANTEE ME MY
DESIRED TRIAL, WITHOUT MS. VINSON BEING INCARCERATED.
AFTER MUCH THOUGHT, I CAME TO THE CONCLUSION THAT
MS. VINSONS' SAFETY WAS PRIORITY, SO I SIGNED THE PLEA.
FOR WHATEVER REASON, THE ADJUDICATION OF THE SENT-
ENCE WAS DONE NOT BY ALLEN REGISTER, BUT BY COUNTY
JUDGE COLBY PEEL. I THOUGHT THIS WAS ODD, SINCE I
HAD ALSO PROVIDED THE UNITED STATE GOVERNMENT WITH
INFORMATION CONCERNING COLBY'S FATHER, FORMER WASH-
INGTON COUNTY SHERIFF FRED PEEL. NEVERTHELESS, I
SIGNED THE PLEA AS A RESULT OF THIS APPARENTLY LEG-
AL KIDNAPPING - HOSTAGE - BLACKMAIL TACTIC THAT THE
STATE HAD USED, AND MS. VINSON WAS RELEASED WITHIN
TEN MINUTES, BROUGHT IN FRONT OF JUDGE PEEL, TOLD
TO "BE GOOD TO YOUR BOYFRIEND" (PROVING THAT EVEN HE
KNEW SHE WAS THE AGGRESSOR), ADJUDICATED HER
GUILTY OF CONTEMPT, AND RELEASED HER. WHEN WE
TRAVELED BACK TO OUR HOME IN PANAMA CITY BEACH,
I REGISTERED AT THE BAY COUNTY PROBATION OFFICE.

I now know that it was a mistake to tranfer my probation to Panama City, and should have followed the advice of the Jacksonvill FBI agents, who advised me to leave the Panama City area because of what Meadows and his cronies were doing. Because of my children though, I simply could not.

(18) After meeting my assigned probation officer, Sonya Gainer, and reporting in without incident for several months, I was, during a regular visit to her office, arrested, and charged with a technical violation of probation. With the two felony batteries that I had been blackmailed into pleading to being the fourth and fifth fabricated charges, this violation of probation would be the sixth, in as many years. The following is an almost unbelievable story of a violation of my civil rights, yet the evidence will prove beyond a shadow of a doubt that these events took place. The following is also the reason that I finally decided to file this complaint.

(A) Upon my arrest, it was revealed to me that I was violated for not completing the batterer intervention program, which I had been ordered to enroll in. I had also enrolled in the anger management program. The BIP program was at all-in-one therapy, led by a doctor Porter, and the anger management classes were held at C.A.R.E. by a team of counsellors. Both of these locations were in Panama City, Florida. At the time of my arrest, this was the only condition of my probation that they claimed that I had violated.

(30) After being informed of the reason for the violation by Ms Gainers superior (for Ms. Gainer was not present), I explained to the gentleman that

6-F

THE VIOLATION WAS IN ERROR, BECAUSE MY PROBATION OR-
DERS HAD AUTHORIZED ME TO RE-ENROLL AT ANY TIME DUR-
ING MY FIVE YEAR PROBATIONARY PERIOD, AS LONG AS
THERE WAS ADEQUATE TIME TO COMPLETE THE PROGRAM
PRIOR TO THE TERMINATION OF THE PROBATION. THIS VIOLAT-
ION OF PROBATION, WHICH WAS THE SIXTH FALSE CHARGE,
TOOK PLACE DURING THE FIRST YEAR OF MY SENTENCE, IN
2007.

(21) ALTHOUGH I EXPLAINED THIS TO THE PROBATION OFFIC-
ER, ALONG WITH THE REASON THAT I HAD WITHDRAWN, I
WAS STILL ARRESTED. FOR THE RECORD, I WOULD LIKE TO
STATE THAT THE REASON THAT I HAD CHOSEN TO WITHDRAW
FROM THE PROGRAM, AFTER COMPLETING 13 OF 24 CLASSES,
IS BECAUSE MY EMPLOYER, W.G. YATES AND SONS CONS-
TRUCTION COMPANY, HAD REQUIRED THAT I BEGIN SEVEN
DAY PER WEEK, TEN HOUR PER DAY SHIFTS (70 HR. WEEK),
IN ORDER TO COMPLETE THE EIGHT-STORY REFLECTIONS
SPA AND RESORT AT THE PANAMA CITY MARRIOT BAY POINT
RESORT, WHICH HAD FALLEN BEHIND SCHEDULE. I WOULD
ALSO LIKE TO STATE THAT DURING THIS SEVENTY-HOUR PER
WEEK SCHEDULE, I SUCCESSFULLY COMPLETED THE AN-
GER MANAGEMENT PROGRAM, AS THE RECORDS WILL RE-
FLECT.

(22) UPON MY ARREST, I INSTRUCTED MS. VINSON, WHO WAS
PRESENT WITH ME AT THE PROBATION OFFICE, TO TAKE THE
DOCUMENTS PROVING THAT I WAS AUTHORIZED TO RE-EN-
ROLL, TO THE STATES ATTORNEYS OFFICE, THE BAY COUNTY
COURTHOUSE, THE WASHINGTON COUNTY COURTHOUSE, AND
TO MS. GAINER, AND MS. VINSON WAS REJECTED AT EACH
LOCATION.

(23) THE FOLLOWING MORNING I WAS CALLED TO A SMALL
OFFICE WITHIN THE BAY COUNTY JAIL, AND WAS TOLD TO
HAVE A SEAT BY A MAN WHO IDENTIFIED HIMSELF AS

6-G

BAY COUNTY SHERIFFS INVESTIGATOR PIERCE. MR. PIERCE
ASKED ME IF I KNEW A GENTLEMAN NAMED IKE DUREN,
AND I EXPLAINED TO HIM THAT MR. DUREN HAD BEEN MY
LANDLORD AT BAY POINT RESORT IN PANAMA CITY BEACH, FL.
HE ASKED ME ABOUT A CHECK THAT WAS GIVEN TO DUREN
BY ME IN THE AMOUNT OF ONE THOUSAND DOLLARS ($1,000.00)
WHICH WAS THE AMOUNT OF MY RENT. HE THEN ASKED
ME IF I HAD STOPPED PAYMENT ON THE CHECK, AND I
TOLD HIM NO, THAT I WOULD NOT EVEN KNOW HOW TO
STOP PAYMENT ON A CHECK. I BRIEFLY EXPLAINED THE
SITUATION (WHICH SHOULD HAVE CONCLUDED THE MATTER),
AND AS MR. PIERCE NOTICED MY MARINE CORPS TATTOO,
HE ASKED SARCASTICALLY, "YOU WERE A MARINE?", AND
BECAUSE OF HIS TONE, I TOOK IT AS AN INSULT. I THEN
RESPONDED BY SAYING, "YES SIR I AM, NOT WAS. I GRAD-
UATED NUMBER ONE OF 278, SERIES HONOR GRADUATE OF
3RD BATTALION PARRIS ISLAND, WITH 4.9/5.0 PROFICIEN-
CY - CONDUCT MARKS OUT OF A PERFECT 5.0/5.0!". HE
THEN ARRESTED ME FOR THE CHARGE OF "STOPPING
PAYMENT WITH INTENT TO DEFRAUD", WHICH WAS THE
SEVENTH FABRICATED CHARGE.

(44) KNOWING THAT PIERCE WAS SENT BY EITHER MEAD-
OWS, HOLLOWAY, OR SEWELL, AND KNOWING THAT THEY
WERE ABOUT TO BEGIN A COURSE OF ACTION TO NOT ONLY
ATTEMPT TO IMPEACH MY CHARACTER, BUT TO SEND ME TO
PRISON FOR A LONG TIME IN RETALIATION FOR MY WHIS-
TLE BLOWING, I AGAIN CONTACTED JIMMY HUTCHINSON
OF NORTH FLORIDA INVESTIGATIONS MANAGEMENT, AND
PUT HIM TO WORK. IT WAS AT THAT POINT THAT I DIS-
COVERED THAT IKE DUREN, MY FORMER LANDLORD, HAD
BEEN QUESTIONING ME ABOUT WHAT WAS GOING ON
WITH MY STATEMENTS TO THE FBI, ETC., BECAUSE HE
WAS A FRIEND OF STEVE MEADOWS, AND WAS RE-

PORTING THE INFORMATION TO MEADOWS IN AN ATTEMPT TO GAIN POLITICAL FAVOR. IT WAS THEN THAT I ALSO DISCOVERED THAT DUREN HAD FILED THE FALSE POLICE REPORT AS A FAVOR AS WELL, AS THE EVIDENCE WILL SHOW.

(05) IN ADDITION TO THIS, MR. HUTCHINSON GATHERED ALL PERTINENT INFORMATION PROVING NOT ONLY THAT I DID NOT STOP PAYMENT ON THE CHECK TO MR. DUREN, BUT IN FACT HAD NEVER STOPPED PAYMENT ON A CHECK IN THE 19 YEARS THAT I HAD BEEN BANKING WITH INNOVAT-IONS FEDERAL CREDIT UNION (FORMERLY NAVAL COASTAL SYSTEMS CENTER FEDERAL CREDIT UNION). HE ALSO GAT-HERED ALL INFORMATION NECESSARY TO PROVE THAT NO CRIME WHATSOEVER HAD TAKEN PLACE, YET WHEN PRE-SENTED TO THE STATES ATTORNEYS OFFICE, THE BAY COUNTY SHERIFFS DEPARTMENT, AND TO JUDGE DON SIMMONS, WHO WAS ASSIGNED TO THE CASE, EACH RE-FUSED TO ACKNOWLEDGE IT. ALTHOUGH THEY HAD PUT A $2,000⁰⁰ BOND ON THE STOP PAYMENT CHARGE, KNOW-ING THAT THERE WAS A HOLD WITHOUT ON THE TECH-NICAL VIOLATION OF THE BIP PROGRAM, AND IT WOULD NOT GET ME OUT OF JAIL, I OPTED TO GIVE THE MONEY TO MR. HUTCHINSON TO EMPLOY HIS RESOURCES. THIS WAS DONE BECAUSE I AM A FIGHTER. NOT IN THE PHYSICAL SENSE, AS THE STATE WOULD HAVE YOU BE-LIEVE, BUT RATHER ONE WHO BELIEVES THE OLD AD-AGE WHICH STATES: "THE ONLY THING NECESSARY FOR EVIL TO PREVAIL, IS FOR GOOD MEN TO DO NOTHING." THIS VERY STRONG BELIEF IS ALSO THE REASON THAT I AM FILING THIS SUIT.

(06) DURING THE INVESTIGATION BY MR. HUTCHINSON, AS I HAD STATED, SEVERAL ATTEMPTS WERE MADE TO PROVIDE THE EVIDENCE TO THE AUTHORITIES BY NOT

ONLY MR. HUTCHINSON, BUT BY MS. VINSON, AND MY-
SELF AS WELL, ALL TO NO AVAIL. ON MY INITIAL AP-
PEARANCE IN FRONT OF JUDGE SIRMONS, MY COURT
APPOINTED PUBLIC DEFENDER JOEL MARGULES (FOR
ROY LAKE WOULD NOT RESPOND), ORDERED ME TO NOT
SPEAK AS LAKE HAD DONE. NOT FALLING FOR THIS
TRICK AGAIN, I WAITED UNTIL THE JUDGE WAS ABOUT
TO CALL THE NEXT DEFENDANT, AND ASKED TO SPEAK.
WITH MUCH SURPRISE, AND PROBABLY ANGRY WITH THE
PUBLIC DEFENDER FOR NOT KEEPING ME QUIET, THE
JUDGE, WITHOUT SAYING A WORD, NODDED HIS HEAD YES.
I THEN ASKED HIM WHY, KNOWING THAT I HAD PRO-
VIDED THE EVIDENCE TO THE STATE (FOR AS THE REC-
ORD WILL SHOW, I SENT IT TO JUDGE SIRMONS PRIOR TO
THIS COURT DATE) HAVE THE CHARGES NOT BEEN DIS-
MISSED, AND WHY, AFTER PROVIDING THE WITNESSES
(I TURNED AND POINTED TO THE WITNESSES, AS VIDEO
RECORDS WILL SHOW), HAS THE STATE NOT FILED CHAR-
GES AGAINST MR. DUREN FOR FILING A FALSE POLICE
REPORT? AT THAT POINT, THE PROSECUTOR, WHO'S NAME
I CAN NOT RECALL, THREW HIS PAPERS ON THE TABLE
IN DISGUIST (AS VIDEO WILL SHOW), AND THE JUDGE
STATED SOMETHING TO THE EFFECT OF THE STATE
THOUGHT THAT THEY HAD HAD ENOUGH EVIDENCE, BUT
DID NOT ELABORATE CONCERNING DURENS FALSE CHAR-
GES, NOR DID HE DISMISS THE CHARGES NOW THAT HE
HAD THE EVIDENCE PROVING MY INNOCENCE, NOR DID
HE ALLOW MY WITNESSES TO SPEAK, BUT RATHER CON-
TINUED THE CASE, WHICH CAUSED ME TO REMAIN IN
THE BAY COUNTY JAIL FOR AN ADDITIONAL MONTH.
(37) AFTER 76 DAYS OF WRONGFUL INCARCERATION
AND MUCH WORK ON BEHALF OF MR. HUTCHINSON
AND MS. VINSON, AS WELL AS SUFFERING MUCH

6-J

GRIEF MYSELF, I WAS BROUGHT TO THE REAR OF THE
JUDGES CHAMBERS, WHERE I WAS MET BY MR. MAR-
GULES. HE THEN ORDERED THE BAILIFF TO HANDCUFF ME
TO A PODIUM WHICH SAT IN THE HALLWAY TO THE COURT-
ROOM, AND IN SPITE OF MY REQUEST, WAS NOT ALLOWED
TO ENTER THE COURTROOM. (THIS WAS NOT FAIR CONSID-
ERING THE FACT THAT, AS A U.S. MARINE, I HAVE AL-
WAYS HAD RESPECT FOR AUTHORITY, AND WOULD NEVER
CONSIDER ACTING INAPPROPRIATELY IN A COURT OF LAW,
EVEN IF CORRUPTION HAD ENTERED INTO IT.) MR. MAR-
GULES THEN ENTERED THE COURTROOM, APPEARED ON MY
BEHALF, AND WAS HANDED AN ROR BOND. IT WAS OB-
VIOUS TO ME THAT THEY HAD NOT EXPECTED ME TO CON-
TEST THE FALSE CHARGES BY PROVING THEY WERE FAB-
RICATED, AND IT WAS ALSO OBVIOUS THAT I HAD DRAWN
SO MUCH ATTENTION TO THEIR CONSPIRING TOGETHER
TO VIOLATE MY CIVIL RIGHTS, THAT THEY WERE VERY
ANXIOUS TO SHIP ME ON TO WASHINGTON COUNTY, IN
HOPES THAT THEIR PUBLIC SERVANTS WOULD DO A BET-
TER JOB OF VIOLATING MY RIGHTS, AND THE COLOR OF
LAW TO VINDICTIVELY PROSECUTE ME.

(28) THE FOLLOWING MORNING, I WAS TOLD BY BAY COUN-
TY JAIL OFFICIALS THAT WASHINGTON COUNTY HAD CAL-
LED, AND WAS ON THE WAY TO PICK ME UP. I WAS TAK-
EN TO THE BASEMENT, WHERE I WAS PLACED IN A
SIX BY EIGHT UNFURNISHED INTERVIEW ROOM, WHERE
I WAS FORCED TO REMAIN, SITTING ON THE FLOOR, FOR
APPROXIMATELY EIGHT HOURS. I WAS EVENTUALLY
TOLD THAT WASHINGTON COUNTY "MUST NOT BE COM-
ING", AND SENT BACK UPSTAIRS. THE WASHINGTON
COUNTY TRANSPORT OFFICER EVENTUALLY PICKED ME
UP THE FOLLOWING DAY.

(29) UPON ARRIVING IN WASHINGTON COUNTY, I WAS FIRST

6-K

APPEARED, WHERE I ATTEMPTED TO EXPLAIN THE SIT-
UATION, BUT WAS NOT ALLOWED. I WAS ORDERED HELD
WITHOUT BOND, AND APPOINTED PUBLIC DEFENDER FLOYD
GRIFFITH, WHO HAD ALSO BEEN APPOINTED TO REPRESENT
MS. VINSON ON THE AFOREMENTIONED CONTEMPT OF COURT
CHARGE.

(30) AFTER SEVERAL WEEKS, I WAS FINALLY CONTACTED
BY PUBLIC DEFENDER FLOYD GRIFFITH. I EXPLAINED TO
HIM THE CIRCUMSTANCES, AND ELABORATED ON THE PARTIC-
ULARS CONCERNING THE ILLEGAL ACTIVITIES OF STEVE
MEADOWS, AND HOW I HAD GIVEN THE STATEMENTS CON-
CERNING HIM AND OTHERS. AFTER EXPLAINING TO HIM
THAT I HAD HIRED MY INVESTIGATOR TO COLLECT THE
EVIDENCE WHICH WOULD EXONERATE ME, HE PRESENTED
ME WITH THE STATES OFFER OF FIVE YEARS IN THE
DEPARTMENT OF CORRECTIONS, AND LEFT.

(31) FOR OBVIOUS REASONS, IT WAS 60 DAYS LATER, AS
WELL AS TWO COURT DATES BEFORE THE CHARGE IN
BAY COUNTY WAS FILED AS "NO INFORMATION", THUS
DROPPED, AND BECAUSE I WAS FINALLY ABLE TO SHOW
THAT I WAS AUTHORIZED TO RE-ENROLL IN THE BIP
PROGRAM, THE VIOLATION OF PROBATION WAS DISMISSED.
AFTER 136 DAYS OF GRUELING SUFFERING, THROUGH
COUNTLESS HOURS OF WRITING, RESEARCHING, INVEST-
IGATING, MISSING WORK, AND SPENDING MONEY, WITH
NO HELP FROM THE PUBLIC DEFENDER, I PROVED THAT
THE VIOLATION WAS, AS THE PREVIOUS CHARGES, A COM-
PLETE FABRICATION. AFTER LOSING NEARLY EVERY-
THING, AFTER MS. VINSON HAVING TO RETURN TO LOUIS-
IANNA TO LIVE WITH FAMILY, AFTER MISSING NUMER-
OUS BOY SCOUT MEETINGS WITH MY SON JACOB (FOR
UNTIL THE BATTERY CHARGES I WAS AN ASSISTANT
SCOUTMASTER), AND MOST IMPORTANTLY, AFTER

MISSING MY DAUGHTER KRISTINS HIGH SCHOOL GRAD-
UATION, I WAS SIMPLY TOLD THAT IT WAS A MISTAKE,
AND THE PROBATION WAS REINSTATED. I WAS TURNED
OUT ON THE STREET, VIRTUALLY HOMELESS, AND TO THE
POINT OF EXHAUSTION FROM MY BATTLE. IF IT WERE NOT
FOR MY PHYSICAL, MENTAL, AND MOST IMPORTANTLY, SPIR-
ITUAL STRENGTH, I BELIEVE THAT I TOO, AS WAS MS.
VINSON, WOULD HAVE BEEN TEMPTED TO SIMPLY GIVE
UP. BY THE GRACE OF GOD, THIS WAS NOT THE CASE.

(32) AFTER BEING EXONERATED LAST YEAR ON THE SIXTH
AND SEVENTH FABRICATED CHARGES, I BEGAN TO RE-
GROUP, WHICH WAS NEARLY, IF NOT COMPLETELY IMPOS-
SIBLE. I SPOKE WITH ATTORNEY JIM APPLEMAN IN
PANAMA CITY, CONCERNING WHAT I SHOULD DO TO PRE-
VENT FURTHER REPRISAL OR ACTS OF RETALIATION FROM
MEADOWS, HOLLOWAY, AND OTHERS, AND THE AGENCIES
THAT THEY CONTROLLED. MR. APPLEMAN, WHO HAD BEEN
MEADOWS BOSS FOR MANY YEARS AS THE STATE ATTOR-
NEY, SUGGESTED THAT I CONTACT A TALLAHASSEE AT-
TORNEY, AND NOT USE ANYONE LOCAL. I THEN CALLED AN
ATTORNEY REFERRAL SERVICE, WHO EXPLAINED THAT I
NEEDED AN ATTORNEY WHO HANDLED WRONGFUL INCAR-
CERATION. THEY THEN GAVE ME THE FIRM OF WILLIAMS
AND JACOBS, IN TALLAHASSEE, FLORIDA.

(33) MS. VINSON AND I THEN MET WITH MR. LEON JACOBS.
I EXPLAINED THE SITUATION, AND ALLOWED MR. JACOBS
TO REVIEW ALL THE DOCUMENTS, TAPES, AND DISCS CON-
CERNING ALL SEVEN FABRICATED CHARGES, INCLUDING THE
INFORMATION OBTAINED THROUGH MY PRIVATE INVESTIG-
ATOR. I EXPLAINED TO HIM THE ILLEGAL WORK THAT
HAD BEEN DONE BY MEADOWS, WHILE USING DEPART-
MENT OF CORRECTIONS INMATES TO DO IT. I TOLD HIM
ABOUT THE OTHER INMATE WHO HAD WORKED WITH ME

ON MEADOWS PROPERTIES IN BOTH BAY AND GULF COUN-
TIES, AND HOW THAT INMATE HAD SIMPLY DISAPPEARED
SHORTLY AFTER I HAD LEAKED THE INFORMATION. I
INFORMED HIM OF THE NON-INMATE INDIVIDUALS WHO
HAD ASSISTED US IN THIS WORK. I ALSO EXPLAINED TO
MR. JACOBS THE STATEMENTS GIVEN TO THE FEDERAL
BUREAU OF INVESTIGATION, THE DEPARTMENT OF COR-
RECTIONS INSPECTOR GENERAL, THE CONGRESSMAN, MR.
PRICE, AND OTHERS, AND THE CONTENTS THEREOF. I TOLD
HIM AS WELL ABOUT A CONVERSATION THAT I HAD HAD
WITH TALLAHASSEE ATTORNEY BENJAMIN CRUMP, CON-
CERNING MR. MEADOWS, AND HOW MR. CRUMP HAD IN-
VITED ME TO LUNCH IN TALLAHASSEE, AND HOW I HAD
FAILED TO FOLLOW UP ON THE INVITATION.

(34) FOR THE RECORD, THE DECISION NOT TO GET INVOLVED
WITH MR. CRUMP, WHO WAS REPRESENTING THE ANDER-
SON FAMILY, WHOSE SON MARTIN HAD DIED WHILE AT-
TENDING THE BAY COUNTY BOOT CAMP, WAS THREE-FOLD.
FIRST, BECAUSE I AM, AND ALWAYS WILL BE A PATRIOT,
I KNEW THAT I WOULD NOT WANT MY CHILDREN TO
KNOW THAT THEIR FATHER HAD BEEN INVOLVED IN A LAW-
SUIT AGAINST OUR OWN GOVERNMENT, ESPECIALLY DUR-
ING A WARTIME SITUATION. SECOND, BECAUSE UPON
CONTACTING ROY LAKE CONCERNING THE STATUS OF MY
3.850 MOTION, HE ADVISED THAT "WE DO NOT NEED TO
GET BEN CRUMP INVOLVED.". THIRD, BECAUSE I HAD
WORKED WITH THE BAY COUNTY JOINT NARCOTICS TASK
FORCE FOR A PERIOD OF OVER TWENTY YEARS, PROVID-
ING SUBSTANTIAL ASSISTANCE, VOLUNTARILY AND FOR
NOTHING IN RETURN, AND HAD MADE WHAT I THOUGHT
WERE MANY FRIENDS THERE, AND FOR WHATEVER
REASON, AT THE TIME, DID NOT WANT TO DISAPPOINT
THEM.

(35) I NOW REALIZE THAT THE INDIVIDUALS RESPONS-
IBLE FOR THE FALSE ARRESTS, WRONGFUL INCAR-
CERATIONS, AND OTHER RIGHTS VIOLATIONS, ARE IN
FACT NOT REPRESENTATIVE OF OUR GOVERNMENT,
BUT RATHER THE EXCEPTION, THEREFORE I EARNEST-
LY PLEAD WITH THE UNITED STATES GOVERNMENT TO
GRANT THE RELIEF REQUESTED.

(36) DURING OUR MEETING WITH MR. JACOBS, AND AF-
TER HE REVIEWED THE DOCUMENTS THAT I POSSESSED,
MR. JACOBS TOLD MS. VINSON AND I THAT HE WOULD
FILE A SUIT, WHICH, BECAUSE OF THE CIRCUMSTANCES,
WOULD NET MS. VINSON AND I A MONETARY SETTLE-
MENT, AND WOULD CAUSE THE STATE TO DROP THE
CHARGES AND PROBATION, AS WELL AS HAVE THE CHAR-
GES EXPUNGED FROM MY RECORD. HIS ONLY REQUIREMENT
WAS THAT I PAY HIM, IN ADDITION TO THE $75.00 CON-
SULTATION FEE, A FEE OF $2,000.00, WITH $300.00 BEING
PAID IN ADVANCE, FOR WHAT HE CALLED A "FILING FEE".
HE ALSO, DURING THE COURSE OF OUR CONVERSATION,
SAID THAT HE WAS FAMILIAR WITH THE CORRUPTION WITH-
IN THE 14TH CIRCUIT, BECAUSE HE WAS HAVING SOME
PROBLEMS WITH A JUDGE IN PANAMA CITY GRANTING A
MOTION. I ATTEMPTED TO FIND OUT WHO THE JUDGE
WAS, BUT MR. JACOBS WOULD NOT DIVULGE HIS NAME.

(37) AT THE CLOSE OF OUR MEETING, I RELUCTANTLY
AGREED TO HIS TERMS. HIS LAST REQUEST WAS THAT I
"FIND OUT EVERYTHING THE FBI HAS ON MEADOWS.". I
AGREED AS WELL, ALTHOUGH I HAD NO IDEA HOW HE EX-
PECTED ME TO OBTAIN THE INFORMATION, NOR WOULD I,
BEING A FEDERALIST, EVER BETRAY MY UNITED STATES
GOVERNMENT.

(38) I THEN LEFT WITH MR. JACOBS, ALL ORIGINAL DOC-
UMENTS CONCERNING THE 2002, 2003, AND 2004 AR-

RESTS WHICH WERE DISMISSED, THE 2005 DOCUMENTS OF THE FABRICATED KIDNAPPING CHARGE, WHICH I WAS FORCED TO PLEAD TO AS TWO (2) FELONY BATTERY CHARGES (ONE WITH NO VICTIM WHATSOEVER), THE TWO (2) FABRICATED VIOLATIONS OF PROBATION IN 2007, AS WELL AS AN ENORMOUS AMOUNT OF EVIDENCE OBTAINED BY MYSELF, AS WELL AS NORTH FLORIDA INVESTIGATIONS MANAGEMENT, ALL OF WHICH POINTED TO THE FACT THAT ALL PARTIES INVOLVED KNEW THAT THE CHARGES HAD BEEN FABRICATED, YET DID NOTHING TO PREVENT IT, BUT RATHER USED THEIR RESPECTIVE POSITIONS OF AUTHORITY TO PERPETUATE IT. IN THIS THERE WERE, ONCE AGAIN, VIOLATIONS OF THE COLOR OF LAW, AS WELL AS MY CONSTITUTIONALLY GUARANTEED RIGHTS.

(39) SINCE THAT TIME, I HAVE NOT BEEN ABLE TO MAKE CONTACT WITH MR. JACOBS, WITH THE EXCEPTION OF ONE TIME, IN WHICH I WAS TOLD BY HIM THAT HE WOULD CALL ME THE FOLLOWING MONDAY, BUT DID NOT. BECAUSE IT IS NOW MY UNDERSTANDING THAT THE SUIT WAS NOT FILED LAST YEAR, AS MR. JACOBS INSURED MS. VINSON AND I THAT IT WOULD BE, I, ALONG WITH MS. VINSON AND MY FATHER, LEONARD JETER, HAVE CONTACTED MR. JACOBS SECRETARY DOZENS OF TIMES IN AN ATTEMPT TO CONTACT MR. JACOBS IN ORDER TO RETRIEVE MY EVIDENCE, ONLY TO BE TOLD THAT HE WOULD SEND IT, BUT HAS NOT, TO DATE, DONE SO. AFTER SENDING SEVERAL LETTERS TO MR. JACOBS, THE LAST OF WHICH WARNED HIM THAT I WOULD EVENTUALLY FILE A WRIT OF MANDAMUS, IT IS OBVIOUS HE REFUSES TO HAND OVER MY EVIDENCE.

(40) BY LISTENING TO THE ADVICE OF MR. JACOBS, AS WELL AS ROY LAKE, AND BY THEM NOT DOING WHAT THEY WERE HIRED TO DO, ALONG WITH THE EFFECTS

OF THE CULMINATION OF SEVEN YEARS OF PERSECUTION, I WAS CORRALLED INTO A SITUATION THAT HAS RESULTED IN WHAT THE STATE, BY WAY OF JUDGE ALLEN REGISTER, HAS DETERMINED IS A WILLFUL TECHNICAL VIOLATION OF MY PROBATION, AND HAS SENTENCED ME TO THE MAXIMUM OF FIVE YEARS IN THE FLORIDA DEPARTMENT OF CORRECTIONS.

(41) BECAUSE I HAVE ASKED TO APPEAL THE SITUATION TO A HIGHER, AND HOPEFULLY MORE NOBLE COURT, I BELIEVE THAT IT IS IN MY BEST INTEREST TO REFRAIN FROM EXPOUNDING UPON THE DETAILS OF THE VIOLATION, WHICH I VEHEMENTLY DENY, NOR WOULD HAVE TAKEN PLACE, NOR EVEN EXISTED, HAD IT NOT BEEN FOR THE MISHANDLING OF THE LAW CONCERNING THE ORIGINAL CHARGES. I HAVE RETAINED FORMER FEDERAL PROSECUTOR BRYANT CAMARENO, OF TAMPA, FLORIDA, AND AM CONFIDENT THAT THE POST CONVICTION PROCESS WILL GO UNTAINTED. CONCERNING THIS COMPLAINT, WHICH I AM FILING ON MY OWN, I FEEL THAT I NEED TO ELABORATE A LITTLE FURTHER, SO THAT YOU MAY CLEARLY SEE THE BREADTH OF THE INFLUENCE OF THE INDIVIDUALS WHO OPPOSED MY WHISTLE-BLOWING.

(42) UPON MY ARRIVAL AT THE DEPARTMENT OF CORRECTIONS, I CONTACTED WILLIAMS & JACOBS VIA A LETTER IN AN ATTEMPT TO GET THE EVIDENCE BACK. WHEN IT WAS OBVIOUS THAT THEY WERE NOT GOING TO SEND IT, AS THEY HAD TOLD MY FATHER THAT THEY WERE GOING TO DO, AND BECAUSE IT HAD BEEN APPROXIMATELY ONE YEAR SINCE I BEGAN TRYING TO RECOUP IT, I CONTACTED ATTORNEY DAVID HOUSE OF BLOUNSTOWN, FLORIDA, TO FILE A WRIT IN HOPES OF FORCING THEM TO RELINQUISH IT. IN CONTACTING MR. HOUSE, I SENT HIM A LETTER REQUESTING HIM TO FILE THE WRIT,

ALONG WITH A 30-PAGE CHRONOLOGICAL RECORD OF THE
EVENTS THAT HAVE TAKEN PLACE FROM 2000-PRESENT.
BECAUSE IT WAS AN ORIGINAL, AND BECAUSE IT IS MY UN-
DERSTANDING THAT DOC WILL NOT MAKE LEGAL COPIES
OF A SUIT AGAINST THE STATE, I SPECIFICALLY REQUES-
TED, WHETHER MR. HOUSE TOOK THE CASE OR NOT, TO
SEND THE RECORD BACK TO ME, AGREEING TO PAY HIM
FOR HIS TIME. MR. HOUSE NEVER RESPONDED. AFTER
ASKING MY DAUGHTER KRISTIN TO CONTACT HIM TO SEE
WHAT THE PROBLEM WAS. KRISTIN INFORMED ME THAT
UPON MAKING CONTACT WITH MR. HOUSE, HE TOLD HER
THAT HE CAN NOT TAKE MY CASE BECAUSE HE WORKS PART
TIME AT THE STATES ATTORNEYS OFFICE UNDER MEA-
DOWS. HE ALSO TOLD HER THAT HE "THINKS" THAT HE
GAVE IT TO SOMEONE AT THE STATES ATTORNEYS OF-
FICE. THIS EVENT TOOK PLACE LESS THAN ONE MONTH
BEFORE MEADOWS WAS DEPOSED BY THE HONORABLE
GLENN HESS AS STATE ATTORNEY OF THE 14TH JUD-
ICIAL CIRCUIT, IN NOVEMBER OF 2008.
(43) IN CLOSING, I REQUEST THAT THE PROSECUTION OF
THIS COMPLAINT TAKE PLACE IN THE GAINESVILLE DIVISION
OF THE DISTRICT COURT FOR THE FOLLOWING REASONS,
WHICH I BELIEVE MAY CREATE A CONFLICT IN THE
OTHER NORTH FLORIDA DIVISIONS:
A. THE FARM, "MEADOWS ACRES", WHICH WAS ONE OF
THE PROPERTIES WORKED ON BY DOC INMATES, INCLUD-
ING MYSELF, WAS PURCHASED BY A JUDGE TAUNTON,
WHO I UNDERSTAND MIGHT BE A FEDERAL JUDGE
IN THE PANHANDLE OF FLORIDA.
B. BECAUSE JUDGE SMOAK, ALSO IN THE PANHANDLE,
WAS THE HUSBAND OF LONG TIME ASSISTANT STATE
ATTORNEY PAMELA SMOAK, WHO WAS A CO-WORKER
OF STEVE MEADOWS.

c. BECAUSE THE GAINESVILLE DIVISION IS AS FAR FROM
   PANAMA CITY AS POSSIBLE, WHILE REMAINING WITH-
   IN THE NORTHERN DISTRICT OF FLORIDA.

(44) WRIT WAS SENT TO LEON COUNTY COURTHOUSE ON
DECEMBER 29, 2008, VIA MADISON CORRECTIONAL IN-
STITUTION LEGAL MAIL, REQUESTING THAT THE
COURT COMPEL WILLIAMS AND JACOBS TO HAND
OVER EVIDENCE TO PLAINTIFF, KURTIS ROY JETER.

(45) BECAUSE THE LAW OFFICE OF WILLIAMS AND JACOBS
WILL NOT RETURN MY DOCUMENTS, AND THE STATE WILL
NOT RESPOND TO MY REQUESTS FOR CERTAIN COPIES,
THE NAME OF THE STATE ATTORNEY ON PAGE 2-B, LINE
#9, WHO ATTEMPTED TO VINDICTIVELY PROSECUTE ME
ON FABRICATED CHARGES, WILL HAVE TO REMAIN BLANK
UNTIL THE COURT COMPELS WILLIAMS AND JACOBS TO
RELENQUISH MY EVIDENCE, OR THE NAME CAN BE
OTHERWISE PROVIDED.

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

(1) BASED ON THE STATEMENT OF FACTS, AS A WHOLE, THE DEFENDANTS HAVE PARTICIPATED IN, BY WAY OF VIN- DICTIVE PROSECUTION, DENIAL OF DUE PROCESS, AND FALSE IMPRISONMENT, THE DENIAL OF MY CONSTITUTION- AL RIGHT TO LIFE, LIBERTY, AND THE PURSUIT OF HAP- PINESS.

## VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

MONETARY SETTLEMENT AS DEEMED APPROPRIATE BY THE COURT, WITH 25% GOING TO DEPARTMENT OF JUSTICE CORRUPTION UNIT, AND 25% TO DEPARTMENT OF VET- ERANS AFFAIRS/IMMEDIATE EMERGENCY RELEASE.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.

**DEC 29, 2008**
(Date)

(Signature of Plaintiff)
U.S.M.C. RET.

**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☒ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the **29TH** day of **DECEMBER** , 20**08** .

(Signature of Plaintiff)
U.S M.C. RET.

Revised 03/07

7

## DEPARTMENT OF CORRECTIONS
## INMATE BANK TRUST FUND
## SPECIAL WITHDRAWAL

TO: _____     FACILITY: _____
  OFFICER IN CHARGE

FROM:  _JETER, KURTIS K._          _A-959775_
  INMATE NAME                       INMATE NUMBER

PLEASE ACCEPT THIS MEMO AS MY REQUEST TO WITHDRAW $ _350.⁰⁰_ FROM MY
INMATE TRUST FUND ACCOUNT FOR THE PURPOSE OF: _FILING FEE - UNITED_
_____ _STATES DISTRICT COURT_
_____

PLEASE MAKE THE TRUST FUND CHECK PAYABLE TO: _CLERK - U.S. DISTRICT_
_____ _COURT_
_____

PLEASE MAIL THE CHECK TO: _CLERK- U.S. DISTRICT COURT_
_____ _401 S.E, FIRST AVE RM 243_
_____ _GAINESVILLE, FLORIDA 32601-6895_

DATE REQUESTED: _07 JAN 09_          REQUESTED BY: _____
                                        INMATE'S SIGNATURE

RECEIVED BY: _____     _____
                OFFICER                          DATE

APPROVED    [ ]
DISAPPROVED [ ]      _____     _____
                OFFICER IN CHARGE                    DATE

TRUST FUND CHECK NUMBER ISSUED _____ DATE ISSUED _____

  NOTE: THIS IS NOT THE ORIGINAL TRUST FUND FORM, BUT

  RATHER A COPY TO SHOW THAT IT WILL BE

DC2-304 (Revised 5-00)   MAILED/REQUESTED TO BE MAILED ON JAN 7, 09

Kurtis R. Jeter 959775 (611385)
Madison Correctional Institution
382 S. W. MCI Way
Madison, Florida
                    32340



Tallahassee
TUE 30 DEC

Clerk, U.S.
401 Southe
Room 243
Gainesvill